# 23-6640-cr

## United States Court of Appeals

*for the*

## Second Circuit

UNITED STATES OF AMERICA,

*Appellee,*

— v. —

LANDDY RODRIGUEZ, AKA Oso, PEDRO DIAZ,
SYLVESTER VANN, AKA Bug,

*Defendants,*

RAMON OQUENDO, AKA Mimo,

*Defendant-Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT (NEW HAVEN)

## BRIEF AND SPECIAL APPENDIX
## FOR DEFENDANT-APPELLANT

BRIAN E. SPEARS
LESLIE A. CAHILL
SPEARS MANNING & MARTINI LLC
*Attorneys for Defendant-Appellant*
2425 Post Road, Suite 203
Southport, Connecticut 06890
(203) 292-9766

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................... iii

INTRODUCTION ........................................................................1

STATEMENT OF JURISDICTION .........................................................1

STATEMENT OF THE ISSUES PRESENTED.................................................2

STATEMENT OF THE CASE.............................................................3

SUMMARY OF THE ARGUMENT...........................................................5

ARGUMENT...........................................................................7

I.    The Evidence at Trial Was Insufficient to Find That Mr. Oquendo Possessed a Firearm in Furtherance of a Drug Trafficking Conspiracy ....................................7

    A.    Factual Background ................................................7

    B.    Standard of Review................................................15

    C.    Discussion .......................................................16

        a.    Applicable Law ...........................................16

        b.    The Mere Presence of an Unloaded Firearm in the Closet Where Drugs Were Recovered is Insufficient to Sustain Mr. Oquendo's Section 924(c) Conviction ...........................................18

II.    Mr. Oquendo's Conviction for Being a Felon in Possession of Ammunition Violates his Rights Under the Second Amendment to the United States Constitution ................................................23

    A.    Factual Background ................................................23

    B.    Standard of Review................................................23

C.    Discussion ...................................................................24

      a.    Applicable Law ..........................................24

      b.    Mr. Oquendo is Protected by the Plain
          Language of the Second Amendment ......................26

      c.    Prohibitions on the Possession of
          Ammunition by Convicted Felons in the
          Home is Inconsistent with the Nation's
          Historical Tradition of Firearm Regulation .............29

      d.    The District Court Plainly Erred in Failing to
          Undertake the *Bruen* Analysis and Conclude
          that the Felon in Possession Charge and
          Conviction Violated Mr. Oquendo's Second
          Amendment Rights ....................................................31

CONCLUSION .....................................................................33

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*District of Columbia v. Heller,*
128 S. Ct. 2783 (2008)............................................................. 25, 26, 27

*Kachalsky v. Cnty. of Westchester,*
701 F.3d 81 (2d Cir. 2012) ..............................................................24

*Maryland Shall Issue, Inc. v. Moore,*
86 F.4th 1038 (4th Cir. 2023)..........................................................28

*McDonald v. City of Chicago,*
130 S. Ct. 3020 (2010)....................................................................25

*New York State Rifle & Pistol Ass'n, Inc. v. Bruen,*
142 S. Ct. 2111 (2022)............................................................. 1, 25, 29

*Range v. Att'y Gen. United States of Am.,*
69 F.4th 96 (3d Cir. 2023) ...................................... 27, 28, 29, 31

*Taveras v. New York City, New York,*
No. 21-398, 2022 WL 2678719 (2d Cir. July 12, 2022) ...................................32

*United States v. Balde,*
943 F.3d 73 (2d Cir. 2019) ..............................................................33

*United States v. Bogle,*
717 F.3d 281 (2d Cir. 2013) .............................................................25

*United States v. Bullock,*
No. 3:18-CR-165-CWR-FKB, 2023 WL 4232309
(S.D. Miss. June 28, 2023) ........................................................ 30, 31

*United States v. Ceballos-Torres,*
218 F.3d 409 (5th Cir. 2000)...........................................................17

*United States v. Coplan,*
  703 F.3d 46 (2d Cir. 2012) .................................................................15

*United States v. Finley,*
  245 F.3d 199 (2d Cir. 2001) ...............................................................19

*United States v. Francis,*
  480 Fed. App'x 8 (2d Cir. 2012) ........................................................21

*United States v. Garcia,*
  587 F.3d 509 (2d Cir. 2009) ...............................................................33

*United States v. Gigliotti,*
  849 Fed. App'x 281 (2d Cir. March 2, 2021) ....................................20

*United States v. Harper,*
  No. 1:21-CR-0236, 2023 WL 5672311 (M.D. Pa. Sept. 1, 2023) ....28

*United States v. Hawkins,*
  547 F.3d 66 (2d Cir. 2008) .................................................................16

*United States v. Henry,*
  888 F.3d 589 (2d Cir. 2018) ...............................................................23

*United States v. Landesman,*
  17 F.4th 298 (2d Cir. 2021) ................................................................16

*United States v. Lewis,*
  62 F.4th 733 (2d Cir. 2023) ................................................................18

*United States v. Lewter,*
  402 F.3d 319 (2d Cir. 2005) ......................................................... 18, 19

*United States v. Miller,*
  954 F.3d 551 (2d Cir. 2020) ...............................................................24

*United States v. Quailes,*
  No. 1:21-CR-0176, 2023 WL 5401733 (M.D. Pa. Aug. 22, 2023) ...28

*United States v. Snow,*
  462 F.3d 55 (2d Cir. 2006) .......................................................... *passim*

*United States v. Valle,*
  807 F.3d 508 (2d Cir. 2015) ................................................................15

*United States v. Vernace,*
  811 F.3d 609 (2d Cir. 2016) ................................................................15

*United States v. Willis,*
  14 F.4th 170 (2d Cir. 2021) ......................................................... 19, 21

## Statutes and Other Authorities:

U.S. Const., amend. II ................................................................. *passim*

U.S. Const., amend. XIV ......................................................................30

18 U.S.C. § 2 ..........................................................................................3

18 U.S.C. § 922(g)(1) .................................................................. *passim*

18 U.S.C. § 924(a)(2) ............................................................................4

18 U.S.C. § 924(c) ...................................................................... *passim*

18 U.S.C. § 924(c)(1)(A) ............................................................... 17, 19

18 U.S.C. § 924(c)(1)(A)(i) ............................................................ 3, 16

21 U.S.C. § 841(a)(1) ............................................................................3

21 U.S.C. § 841(b)(1)(B)(vi) ................................................................3

21 U.S.C. § 841(b)(1)(C) .......................................................................3

21 U.S.C. § 846 .....................................................................................3

28 U.S.C. § 1291 ...................................................................................2

Fed. R. App. P. 4(a)(2) ..........................................................................2

Fed. R. Crim. P. 29 ......................................................................... 14, 19

## **INTRODUCTION**

Through this appeal Defendant-Appellant Ramon Oquendo seeks to overturn a conviction for possession of a firearm in furtherance of a drug trafficking conspiracy that was obtained on less than sufficient evidence at trial. Mr. Oquendo also challenges the constitutionality of his conviction for being a felon in possession of ammunition as violative of his rights under the Second Amendment, in light of the precedent established by *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022), and subsequent decisions interpreting *Bruen*.

## **STATEMENT OF JURISDICTION**

Defendant-Appellant Ramon Oquendo appeals from the judgment and conviction entered in the United States District Court for the District of Connecticut (Hall, *J.*) following a trial in which the jury found him guilty of five counts of the Superseding Indictment charging him with conspiracy to distribute and possess with intent to distribute fentanyl; possession with intent to distribute and distribution of 40 grams of more of fentanyl; possession with intent to distribute cocaine base and fentanyl; possession of

a firearm in furtherance of a drug trafficking crime; and being a felon in possession of ammunition.

Final judgment entered on June 9, 2023, and Mr. Oquendo concurrently filed a timely notice of appeal.[1]  (*See* SPA-1-5; A-844.)  This Court has jurisdiction over Mr. Oquendo's appeal of the jury verdict pursuant to 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES PRESENTED

1. Whether the evidence was sufficient to find that Mr. Oquendo's possession of an unloaded firearm was "in furtherance of" the charged drug trafficking crime, where the magazine was wrapped in cellophane and thus not readily operable, and where no other evidence was presented at trial connecting Mr. Oquendo to firearm use or possession?

2. Whether the District Court plainly erred in neglecting to address the presumptive unconstitutionality of Mr. Oquendo's charge and conviction for being a felon in possession of ammunition, in light of the standard set forth in *Bruen*?

---

[1]    The notice of appeal was docketed on June 6, 2023, but because it was filed after the district court imposed sentence yet before the entry of final judgment, it "is treated as filed on the date of and after the entry."  Fed. R. App. P. 4(a)(2).

## STATEMENT OF THE CASE

On December 7, 2022, a grand jury returned a Superseding Indictment charging Mr. Oquendo with: conspiracy to distribute and to possess with intent to distribute fentanyl in the quantity of 40 grams or more, in violation of 21 U.S.C. § 846 (Count One); possession with intent to distribute and distribution of fentanyl in the quantity of 40 grams or more on or about August 11, 2021, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(vi) (Count Two); possession with intent to distribute and distribution of fentanyl on or about August 25, 2021, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) (Count Three);[2] possession with intent to distribute cocaine base and fentanyl on or about October 26, 2021, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) (Count Four); possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i) (Count Five); and unlawful possession of ammunition by a person previously convicted of a felony, in violation of 18 U.S.C. §§ 922(g)(1)

---

[2]     Mr. Oquendo was also charged in Counts Two and Three with aiding and abetting as an alternate theory of liability, in violation of 18 U.S.C. § 2.

3

and 924(a)(2) (Count Six). *See* A-802, A-811. Before trial, the government moved to dismiss Count Three of the Superseding Indictment as to Mr. Oquendo. *See* A-809.

A four-day trial commenced on February 24, 2023 before the District Court. At the close of the government's evidence, Mr. Oquendo moved for a judgment of acquittal, which the District Court denied. *See* A-592–595. The defense did not put on a case and the jury thereafter returned verdicts of guilty as to all remaining counts in the Superseding Indictment. *See* A-811–814. Mr. Oquendo thereafter renewed his motion for judgment of acquittal as to Count Five, which the District Court denied in a written ruling. A-819.

On May 25, 2023, Mr. Oquendo was sentenced to consecutive terms of the mandatory minimum of 60 months of imprisonment on each of Counts One and Five, and to concurrent terms of 60 months on Counts Two and Four, and 36 months on Count Six, for a total term of imprisonment of 120 months, to be followed by a total of five years of supervised release. SPA-2. This appeal followed.

4

## SUMMARY OF THE ARGUMENT

This Court has repeatedly cautioned that mere possession of a firearm by an individual who sells narcotics is an insufficient basis to sustain a conviction for possessing a firearm "in furtherance" of a drug trafficking crime within the meaning of 18 U.S.C. § 924(c). Instead, something more is required to demonstrate that the firearm provided an actual or hypothetical advantage to the individual's ability to transact drugs and/or protect his or her drug product. Often, this can be established by eyewitness testimony describing the nature of the defendant's firearms possession or, in the absence of such testimony, evidence that firearms were discovered in a way that would allow a jury to draw the reasonable inference that they were readily accessible to protect the defendant's drug stash or drug proceeds.

These classic indicia of firearms possession "in furtherance" of drug trafficking were not presented at Mr. Oquendo's trial, and to obtain its Section 924(c) conviction, the government relied instead on the proximity of an *unloaded* firearm found in Mr. Oquendo's apartment—which was not the site of any drug deals by the government's own evidence—to the presence

5

of narcotics, cash, and drug trafficking materials.  The gun had no bullet in its chamber and a loaded magazine was wrapped in green cellophane and placed separately on top of the firearm.  To render the firearm usable, therefore, the magazine would have needed to be unwrapped and loaded— a process that defeats the inference of accessibility that is normally sufficient to obtain a Section 924(c) charge.  In addition, despite the extensive evidence of the government's surveillance of Mr. Oquendo and his co-defendants presented at Mr. Oquendo's trial, none of this evidence connected Mr. Oquendo to firearms use or possession, and there was no evidence that Mr. Oquendo was dealing drugs out of his home, where the gun was found.

Mr. Oquendo respectfully submits that this case presents a bridge too far from those instances where this Court has upheld a Section 924(c) conviction obtained on the basis of the statute's outermost reaches.  To convict Mr. Oquendo of possessing a firearm in furtherance of a drug trafficking crime simply because he possessed an unloaded weapon in his home and stored it and the ammunition with other contraband is tantamount to convicting him for being a drug dealer in possession of a gun.

6

Mr. Oquendo also challenges the constitutionality of his charge and conviction for being a felon in possession of ammunition in light of the Supreme Court's holding in *Bruen* and subsequent decisions that recognize that in the aftermath of *Bruen*, Mr. Oquendo is a "person" within the meaning of the Second Amendment, whose right to possess firearms and ammunition in the home remains presumptively intact. In the absence of the government's ability to show that the bar on Mr. Oquendo's possession of ammunition accords with the historical tradition of firearm regulation in the United States, the conviction in Count Six cannot be sustained.

## ARGUMENT

I. **The Evidence at Trial Was Insufficient to Find That Mr. Oquendo Possessed a Firearm in Furtherance of a Drug Trafficking Conspiracy**

### A. Factual Background

The evidence relevant to the government's presentation as to its Section 924(c) charge against Mr. Oquendo stemmed principally from the execution of a search warrant at Mr. Oquendo's home in Waterbury, Connecticut on October 26, 2021. Special Agent ("SA") Andrew Hoffman

7

with the Drug Enforcement Administration ("DEA") testified that he was one of the agents assigned to an investigation into Mr. Oquendo and his co-defendant, Landdy Rodriguez, and that he served as the team leader for the execution of the search warrant at Mr. Oquendo's apartment. A-86–88. SA Hoffman testified that as his team approached the apartment the morning of October 26, 2021, they announced their presence as law enforcement and observed Mr. Oquendo in the second-floor window, who complied with the officers' directives to show his hands. A-96. Mr. Oquendo was identified as located in what SA Hoffman described as the master bedroom, on the second floor of the apartment. A-105.

SA Hoffman testified that after the residence was secured and the search was initiated, he was alerted to the discovery of a cardboard box in the bottom of the master bedroom closet. A-111; *see* A-778. Upon moving the items in the box, he observed the butt of a gun inside of a gray plastic bag. A-111; *see* A-779. The gun was later identified as a semiautomatic handgun, and its slide was wrapped tightly with green cellophane. A-112; *see* A-780. It contained a marking indicating "Polymer" and did not contain

8

a serial number. A-117-118. A loaded magazine had been placed separately on top of the gun within the cellphone. A-115; *see* A-781. The chamber of the gun itself did not contain a bullet. A-250. The parties stipulated that the ammunition recovered from the magazine had been transported, shipped, or received in interstate or foreign commerce. A-123–124. SA Hoffman testified that narcotics were also recovered from the cardboard box containing the gun. A-126–127. The government introduced the lab reports identifying net weights of approximately 88.5 grams of fentanyl and 64 grams of cocaine base, *see* A-798, A-799, as well as a mixture of non-controlled substances, *see* A-798, A-800, which were generated from tests of the substances seized from the cardboard box.

SA Hoffman testified that other materials, including small vials and glassine baggies, rubber bands, green cellophane wrapping, a sifter, and a Kay Jewelers credit card in Mr. Oquendo's name, were found in plastic bags in the same closet. A-146–148; *see* A-791–A794. While some of the items were found in the cardboard box and others were found in two separate plastic bags, the evidence was ultimately mixed together when it was

9

photographed and thus presented to the jury. *See* A-144–145. SA Hoffman also testified that $43,850 in U.S. currency was recovered from a storage unit in a dresser next to the closet. A-150–151; *see* A-783. He testified to a smaller quantity of narcotics discovered in a backpack in the second bedroom, A-153–154, and the government introduced a lab report indicating that this substance comprised approximately 10 grams of fentanyl. A-797. SA Hoffman testified that the backpack also contained an envelope addressed to Mr. Oquendo, a plastic bag containing rubber bags, a spoon, sifter, comb, additional plastic baggies, and plastic wrap. A-157–158, A-784. In addition, a postal scale was found in the basement, A-158, A-785, and other pieces of mail and identification materials related to Mr. Oquendo were recovered from the residence. A-159–160; A-786–788.[3]

---

[3] One of these was a change of address confirmation from the postal service, A-789, and another was a piece of mail addressed to Mr. Oquendo at a different address in Bridgeport, Connecticut. *See* A-790. A piece of mail addressed to Carlos Collazo at the Waterbury address where the search warrant was executed was also seized, *see* A-801, and SA Hoffman indicated that this name had no relevance to him in terms of the investigation. A-168–169. He testified that an inquiry to the utility company indicated that Mr. Oquendo had started service at the Waterbury residence on February 13, 2021. A-162.

Special Agent Michael Oppenheim testified as an expert witness for the government and described the differences between privately made and commercially manufactured firearms, including that most privately made firearms, *i.e.*, "ghost guns," do not contain serial numbers. A-525–529. He indicated that the industry leader for the frame kits that are used to make ghost guns is Polymer 80, which was designed to accept Glock parts. A-527–528. Special Agent Oppenheim testified as to the process of obtaining a serial number and registering a privately made firearm in Connecticut. A-531–533.

The government also offered evidence generated during its investigation into the drug trafficking activities of Mr. Rodriguez. SA Hoffman testified to his involvement in a Title III wiretap into Mr. Rodriguez's cell phone between August and October 2021. *See* A-187. Other law enforcement officers offered testimony based on their surveillance of certain interactions that were monitored as an outcome of these intercepted calls. For example, Detective Vincent Landisio testified as to having observed a narcotics deal between Mr. Rodriguez and Pedro Diaz at the

apartment of Cynthia Cruz, Mr. Rodriguez's girlfriend, on August 11, 2021. *See generally* A-296–299, A-310–345. Detective Landisio testified that at a certain point after meeting Mr. Rodriguez at Ms. Cruz's apartment in Waterbury, Mr. Diaz went back to his car—a BMW SUV with a Pennsylvania license plate—at which time Mr. Oquendo, who had also been identified on some of the intercepted calls with Mr. Rodriguez, arrived with his wife. A-333–336. Mr. Diaz emerged from his vehicle with a black bag, and all three men went into Ms. Cruz's apartment. A-337, A-343. Eventually Mr. Oquendo came out of the apartment and drove away with his wife, and Mr. Diaz later left and was followed by the investigative team. A-345. Pennsylvania State Trooper Justin Hope testified as to the stop and search he subsequently conducted of Mr. Diaz in Berks County, Pennsylvania, during which the black bag was discovered to have contained fentanyl contained in a sandwich bag wrapped in several layers of green plastic bag and small empty plastic sandwich bags. A-379–385; *see* A-795. The government introduced the lab report indicating that the fentanyl contained a net weight of approximately 48.9 grams. *See* A-506; A-796.

12

Detective Landisio also testified as to the outcome of his surveillance of Mr. Rodriguez, Mr. Oquendo, and other individuals at Ms. Cruz's apartment on August 25 and September 22, 2021, and the government introduced contemporaneous intercepted phone calls in which the participants appeared to discuss certain monetary transactions. *See generally* A-350–364, A-413–415.[4] Task Force Officer Luis Ramos, who was part of the team that conducted surveillance and listened to the intercepted calls from Mr. Rodriguez's phone, testified to similar phone calls between Mr. Rodriguez and Mr. Oquendo on various dates throughout September 2021 that led to Mr. Oquendo meeting co-defendant Sylvester Vann at Mr. Rodriguez's directive. *See generally* A-477–503.

Aside from the recovery of the fentanyl from Pedro Diaz, none of the other surveillance to which the government witnesses testified yielded evidence of any contraband. Nor was there any testimony or other evidence suggesting that any individual, including Mr. Oquendo, possessed a firearm

---

[4] The government's theory was that the reference to quantities of "pesos" or "bucks" in these calls corresponded to quantities of fentanyl. *See, e.g.*, A-558, A-611, A-613.

13

in connection with the alleged drug trafficking transactions. No cooperating witness with firsthand knowledge testified during the trial. The government's case was devoid of any firsthand description of Mr. Oquendo's role in the narcotics conspiracy and devoid of any evidence that Mr. Oquendo was seen carrying a weapon at any point or that any narcotics transactions occurred at Mr. Oquendo's residence.

At the close of the government's case, Mr. Oquendo's counsel made an oral motion for judgment of acquittal, which the District Court denied. *See* A-592–595. The jury returned guilty verdicts on all remaining charges in the Superseding Indictment.[5] Mr. Oquendo thereafter filed a timely renewed Rule 29 motion for judgment of acquittal as to Count Five on the grounds that: 1) the government failed to present any evidence that the firearm in question was capable of or could be converted to expel a projectile by an explosive action, so as to meet the statutory definition of a "firearm"; and 2)

---

[5] As noted previously, before trial, the government had moved to dismiss Count Three of the Superseding Indictment as to Mr. Oquendo, which had charged Mr. Rodriguez and Mr. Oquendo with one count of possession with intent to distribute and distribution of fentanyl on or about August 25, 2021. *See* A-809.

14

the evidence was insufficient in any event to prove that Mr. Oquendo possessed the firearm "in furtherance of" a drug trafficking crime. *See* A-815–817. On April 3, 2023, the District Court entered a written ruling denying the motion. A-819–827.

## B. Standard of Review

This Court reviews challenges to the sufficiency of the evidence *de novo*. *See, e.g.*, *United States v. Vernace*, 811 F.3d 609, 615 (2d Cir. 2016). The Court "must view the evidence in the light most favorable to the government, crediting every inference that could have been drawn in the government's favor, and deferring to the jury's assessment of witness credibility and its assessment of the weight of the evidence." *Id*. (quoting *United States v. Coplan*, 703 F.3d 46, 62 (2d Cir. 2012)). Yet "[t]his standard does not mean that if there is any evidence that arguably could support a verdict, [the Court] must affirm." *United States v. Valle*, 807 F.3d 508, 515 (2d Cir. 2015). Rather, "[i]f the evidence viewed in the light most favorable to the prosecution gives equal or nearly equal circumstantial support to a theory of guilt and a theory of innocence, then a reasonable jury must

15

necessarily entertain a reasonable doubt." *United States v. Landesman*, 17 F.4th 298, 320 (2d Cir. 2021) (quoting *United States v. Hawkins*, 547 F.3d 66, 71 (2d Cir. 2008)).

## C. Discussion

### a. *Applicable Law*

Title 18, United States Code, Section 924(c)(1)(A)(i) provides in relevant part that "any person who, during and in relation to any . . . drug trafficking crime . . . for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such . . . drug trafficking crime . . . be sentenced to a term of imprisonment of not less than 5 years."  The jury was instructed that to find Mr. Oquendo guilty of Count Five, the government was required to prove that: "(1) Mr. Oquendo committed a drug trafficking crime for which he might be prosecuted in a court of the United States; and (2) Mr. Oquendo knowingly possessed a firearm during and in relation to the commission of, or knowingly possessed a firearm in furtherance of, the crime charged in

16

Count Four, possession with intent to distribute a mixture and substance containing a detectable amount of cocaine base, and a mixture and substance containing a detectable amount of fentanyl." A-741.

On the "in furtherance" aspect of the second element, the Court explained that "to possess a firearm 'in furtherance of the crime' means that the firearm helped forward, advance, or promote the commission of the crime." A-743. Thus, "[t]he mere possession of the firearm at the scene of the crime is not sufficient under this definition. The firearm must have played some part in furthering the crime in order for this element to be satisfied." A-743–744.

This Court has cautioned that "the government cannot convict under § 924(c)(1)(A) by relying on the generalization that 'any time a drug dealer possesses a gun, that possession is in furtherance, because drug dealers generally use guns to protect themselves and their drugs.'" *United States v. Snow*, 462 F.3d 55, 62 (2d Cir. 2006) (quoting *United States v. Ceballos-Torres*, 218 F.3d 409, 414 (5th Cir. 2000)). Instead, the jury should consider the presence of certain factors such as "the type of drug activity that is being

17

conducted, accessibility of the firearm, the type of the weapon, whether the weapon is stolen, the status of the possession (legitimate or illegal), whether the gun is loaded, proximity to drugs or drug profits or [the defendant] himself, and the time and circumstances under which the gun is found." A-744; *accord Snow*, 462 F.3d at 62 n.6. In considering these factors, "the ultimate question is whether the firearm 'afforded some advantage (actual or potential, real or contingent) relevant to the vicissitudes of drug trafficking.'" *Snow*, 462 F.3d at 62 (quoting *United States v. Lewter*, 402 F.3d 319, 322 (2d Cir. 2005)).

**b. *The Mere Presence of an Unloaded Firearm in the Closet Where Drugs Were Recovered is Insufficient to Sustain Mr. Oquendo's Section 924(c) Conviction***

Mr. Oquendo acknowledges the ample caselaw establishing that the recovery of a *loaded* and accessible firearm in proximity to the seizure of narcotics and drug packaging materials can be sufficient to establish firearm possession "in furtherance" of a drug trafficking crime. *See, e.g.*, *United States v. Lewis*, 62 F.4th 733, 746 (2d Cir. 2023) (upholding conviction where the "loaded gun was found with the drugs, which were packaged for

18

distribution and which [defendant] admitted in state court to intending to distribute"); *United States v. Willis*, 14 F.4th 170, 184 (2d Cir. 2021) (sustaining conviction where semi-automatic rifle was found in apartment, in addition to "[a] loaded .357 caliber Magnum pistol" that generated a likely DNA match to the defendant, as "[b]oth weapons were readily accessible to protect the contraband); *Snow*, 462 F.3d at 63 (loaded handguns were found in close proximity to drug packaging paraphernalia and several thousand dollars in cash); *Lewter*, 402 F.3d at 322 (firearm was loaded with hollow-point bullets and were stored within feet of drug stash).[6]

In Mr. Oquendo's case, however, the firearm was not loaded. Instead, a loaded magazine was wrapped tightly in cellophane on top of the firearm.

---

[6] *United States v. Finley*, 245 F.3d 199 (2d Cir. 2001), presents the only precedential decision of this Court of which Mr. Oquendo is aware in which the Court upheld a 924(c)(1)(A) conviction on the basis of the sufficiency of the evidence involving possession of an unloaded firearm. However, there, the defendant did not renew his Rule 29 motion at the close of the defense case, and the Court renewed the claim for plain error. *See id.* at 202. In addition, the Court's opinion did not address the "in furtherance" element needed to prove a Section 924(c) violation and instead confined its review to the argument that the defendant did not have knowledge of or dominion over the firearm and the house in which it was recovered. *See id.* at 203.

*See* A-115; A-781.  The magazine would therefore need to be unwrapped and loaded before the firearm could be rendered usable.  It was therefore not "readily accessible to protect drugs, drug proceeds, or the drug dealer himself," *Snow*, 462 F.3d at 63, as in other cases where this Court has upheld Section 924(c) convictions on the basis of a firearm's proximity to a drug stash or drug packaging materials.

In addition, there was no evidence presented at Mr. Oquendo's trial to indicate that firearms were possessed by Mr. Oquendo or his alleged co-conspirators in the course of any distribution of narcotics.  Despite the extensive photographic and wiretap surveillance conducted by the government over several months—much of which was introduced at trial—none of this surveillance yielded any connection between Mr. Oquendo and the use or possession of firearms.  *Cf. United States v. Gigliotti*, 849 Fed. App'x 281, 288–89 (2d Cir. March 2, 2021) (summary order) (upholding conviction where, *inter alia*, "law enforcement recovered seven firearms and a large collection of ammunition from the basement of the restaurant," and "a former co-conspirator[] testified to having seen [the defendant] pull a gun

out of a drawer in the restaurant basement, which served as the center of operations for [defendant's] drug import operation, commenting that he was in a difficult business and that 'you need to protect the merchandise.'"); *United States v. Francis*, 480 Fed. App'x 8, 10 (2d Cir. 2012) (summary order) (affirming conviction based upon, *inter alia*, witness testimony that the defendant "and other participants in the conspiracy regularly possessed firearms in order to protect themselves, their marijuana, and their cash," and that the defendant "himself held firearms while guarding one of the crew's Bronx stash houses").

Similarly, the government presented no evidence—wiretap recordings, cooperating witness testimony, or otherwise—of any drug transaction occurring at Mr. Oquendo's apartment in Waterbury. Instead, the evidence showed that the search location primarily served as a residence for Mr. Oquendo and his wife. This Court has deemed it significant where the evidence showed that the firearm was recovered from a premises that served principally as the site of drug trafficking activity as opposed to the defendant's residence. *See Willis*, 14 F.4th at 184–85 (concluding, with

respect to one defendant, that "the combination of drugs and tools of the drug trade in the lower apartment, and the fact that Willis lived elsewhere, provide adequate support for the jury's verdict that the firearms were used in furtherance of drug trafficking," and as to the second, that "[b]ecause the weapons were readily accessible to protect drugs or drug proceeds, a rational trier of fact could have found that Pierce was guilty of possessing a weapon in furtherance of drug trafficking," where "Pierce did not live where the weapons were located and kept them at an apartment that served as a stash house."). Such evidence is probative of the "in furtherance" element, but is wholly lacking in this case.

For the jury to convict Mr. Oquendo of possessing a firearm in furtherance of a drug trafficking crime based solely on the proximity of the unregistered gun to narcotics and packaging materials—where the magazine was not even loaded or stored in such a way as to be rendered readily usable and was found in Mr. Oquendo's home, as opposed to in a stash or distribution house or at the site of a drug sale—is thus tantamount to finding him guilty for being a drug dealer in possession of a gun. *See*

22

*Snow*, 462 F.3d at 62. The law requires more, and the conviction in Count Five should accordingly respectfully be reversed.

## II. Mr. Oquendo's Conviction for Being a Felon in Possession of Ammunition Violates his Rights Under the Second Amendment to the United States Constitution

### A. Factual Background

Mr. Oquendo's conviction in Count Six was based upon the ammunition recovered from the magazine wrapped in cellophane on top of the gun found in the closet of the primary bedroom on October 26, 2021. As noted previously, the parties stipulated that the ammunition had been transported, shipped, or received in interstate or foreign commerce. A-123–124. The parties also stipulated that Mr. Oquendo had previously been convicted of a crime punishable by a term of imprisonment exceeding one year before his arrest in the instant case. A-690.

### B. Standard of Review

This Court reviews *de novo* challenges to the constitutionality of a federal statute. *See, e.g.*, *United States v. Henry*, 888 F.3d 589, 596 (2d Cir. 2018). However, when a challenge was not raised in the District Court, this

Court reviews for "plain error." In so doing, the Court "consider[s] whether (1) there is an error; (2) the error is clear or obvious, rather than subject to reasonable dispute; (3) the error affected the appellant's substantial rights; and (4) the error seriously affects the fairness, integrity or public reputation of judicial proceedings." *United States v. Miller*, 954 F.3d 551, 557–58 (2d Cir. 2020) (internal quotation marks and citation omitted).

## C. Discussion

### a. *Applicable Law*

Prior to June of 2022, this Court had applied means-end scrutiny to constitutional challenges to government action that burdened the right to bear arms. *See Kachalsky v. Cnty. of Westchester*, 701 F.3d 81, 96 (2d Cir. 2012) (applying intermediate scrutiny to New York licensing scheme that restricted ability to carry a concealed handgun in public). And this Court had additionally upheld the constitutionality of Section 922(g)(1), which renders it unlawful for a convicted felon to possess a firearm or ammunition that has been shipped or transported in interstate or foreign commerce, on the grounds that then-recent Supreme Court precedent did not "cast doubt

24

on longstanding prohibitions on the possession of firearms by felons." *United States v. Bogle*, 717 F.3d 281 (2d Cir. 2013) (*per curiam*) (quoting *District of Columbia v. Heller*, 128 S. Ct. 2783, 2816–17 (2008), and citing *McDonald v. City of Chicago*, 130 S. Ct. 3020, 3047 (2010)).

However, in June 2022, the Supreme Court overturned *Kachalsky* and announced a new standard for assessing Second Amendment challenges. The Court held that instead of applying means-end scrutiny to such challenges, "[w]hen the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct"[;] in such instances "[t]he government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111, 2129–30 (2022). Thus, "[o]nly if a firearm regulation is consistent with this Nation's historical tradition may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command.'" *Id.* at 2126 (citation omitted).

*Bruen* accordingly abrogated *Bogle* in so far as it promulgated a new framework for evaluating Second Amendment claims, which this Court has yet to apply in evaluating the constitutionality of Section 922(g)(1).

### b. *Mr. Oquendo is Protected by the Plain Language of the Second Amendment*

The Second Amendment states: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." At the first step of the analysis required under *Bruen*, Mr. Oquendo is included among "the people" whose rights shall not be infringed. In *Heller*, the Supreme Court rejected a narrower interpretation of the Second Amendment that would have protected only the right "to keep and bear Arms" in the context of the militia, applying instead "a strong presumption that the Second Amendment right is exercised individually and belongs to all Americans." 128 S. Ct. at 2791. The *Heller* Court further found that this right is particularly pronounced in the home, "where the need for defense of self, family, and property is most acute." *Id.* at 2817.

26

Although it is true that the *Heller* Court indicated that its opinion should not "be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill," *id.* at 2816–17, the decision in *Bruen* called into question this dictum. For example, following *Bruen*, the Court of Appeals for the Third Circuit held in an as-applied challenge to Section 922(g)(1), that despite his prior conviction, the defendant-appellant "remain[ed] one of 'the people' protected by the Second Amendment." *Range v. Att'y Gen. United States of Am.*, 69 F.4th 96, 106 (3d Cir. 2023) (*en banc*).[7] The Third Circuit noted that because "the criminal histories of the plaintiffs in *Heller*, *McDonald*, and *Bruen* were not at issue in those cases," "their references to 'law-abiding, responsible citizens' were dicta," and further, that imposing a limited interpretation of "the people" in the context of the Second Amendment would be at odds with other Constitutional provisions, which confer upon "the people" the "rights to

---

[7] The defendant's conviction for make a false statement to obtain food stamps was a misdemeanor under Pennsylvania law, but because it was punishable by up to five years of imprisonment, it fell within the ambit of Section 922(g)(1). *See id.* at 98.

assemble peaceably, to petition the government for redress, and to be protected against unreasonable searches and seizures." *Id.* at 101–02 (footnotes omitted).

In addition, as the Fourth Circuit more recently noted, "[p]ost-*Bruen*, several courts have held that 'the people' refers to all Americans, and is not limited to ordinary, law-abiding adult citizens." *Maryland Shall Issue, Inc. v. Moore*, 86 F.4th 1038, 1043 n.5 (4th Cir. 2023); *see also, e.g.*, *United States v. Harper*, No. 1:21-CR-0236, 2023 WL 5672311, at *8 (M.D. Pa. Sept. 1, 2023) (finding that "the fact that Harper has multiple felony robbery and drug trafficking convictions instead of Range's single false statement conviction is a distinction, but it does not warrant a different conclusion as to the threshold question of whether Harper is one of 'the people' protected by the Second Amendment," and dismissing indictment charging Section 922(g)(1) violation based on government's failure to satisfy its burden under *Bruen*); *United States v. Quailes*, No. 1:21-CR-0176, 2023 WL 5401733, at *8 (M.D. Pa. Aug. 22, 2023) (same, with respect to defendant with prior felony drug trafficking convictions).

28

Here, Mr. Oquendo's prior narcotics convictions similarly do not deprive him of his status as a "person" whose rights are safeguarded by the Second Amendment. And the fact that here, the government has obtained a conviction based upon Mr. Oquendo's possession of ammunition in the home, where the Second Amendment right is most forceful, further underscores that his conduct falls within the Amendment's plain text.

**c.** ***Prohibitions on the Possession of Ammunition by Convicted Felons in the Home is Inconsistent with the Nation's Historical Tradition of Firearm Regulation***

At the second step of the *Bruen* inquiry, the government will be unable to meet its burden of establishing that the prohibition on Mr. Oquendo's possession of ammunition "is consistent with the Nation's historical tradition of firearm regulation." *Bruen*, 142 S. Ct. at 2130. In *Range*, the *en banc* Third Circuit noted that it is only since 1961 that "federal law has generally prohibited individuals convicted of crimes punishable by more than one year of imprisonment from possessing firearms," while an earlier version of the statute enacted in 1938 applied strictly to violent criminals. 69 F.4th at 104 (quoting Gov't En Banc Br.). As with Mr. Oquendo, the 1938

version of the statute would not have applied to the defendant in *Range*, and the Third Circuit further found that "[w]hatever timeframe the Supreme Court might establish in a future case, we are confident that a law passed in 1961—some 170 years after the Second Amendment's ratification and nearly a century after the Fourteenth Amendment's ratification—falls well short of 'longstanding' for purposes of demarcating the scope of a constitutional right." *Id.*; *see also United States v. Bullock*, No. 3:18-CR-165-CWR-FKB, 2023 WL 4232309, at *2 (S.D. Miss. June 28, 2023) ("The federal felon-in-possession ban was enacted in 1938, not 1791 or 1868—the years the Second and Fourteenth Amendments were ratified. The government's brief in this case does not identify a 'well-established and representative historical analogue' from either era supporting the categorical disarmament of tens of millions of Americans who seek to keep firearms in their home for self-defense"). The *en banc* Third Circuit accordingly held "that the Government has not shown that the Nation's historical tradition of firearms regulation supports

depriving Range of his Second Amendment right to possess a firearm."

*Range*, 69 F.4th at 106.[8]

In short, there is no national historical tradition that would satisfy *Bruen's* requirement of disarming Mr. Oquendo on the basis of his prior narcotics trafficking convictions, and the government therefore cannot overcome the presumption of constitutionality that attends Mr. Oquendo's possession of ammunition in the home.

### d. *The District Court Plainly Erred in Failing to Undertake the* **Bruen** *Analysis and Conclude that the Felon in Possession Charge and Conviction Violated Mr. Oquendo's Second Amendment Rights*

At the first and second step of the plain error analysis, the District Court's failure to address the constitutionality of Mr. Oquendo's felon in possession charge under *Bruen* was clear and obvious given the sea change that *Bruen* enacted in Second Amendment jurisprudence and its wide recognition by the courts and the public. Indeed, less than one month after

---

[8]     In addition, as one district court to recently confront the issue observed, "in cases litigated not that long ago, the U.S. Department of Justice formally advanced the position that early American history did *not* support felon disarmament." *Bullock*, 2023 WL 4232309, at *28.

*Bruen* was decided, this Court remanded a case where the district court had applied intermediate scrutiny to a challenged regulation under *Kachalsky* for the district court to reconsider its decision under *Bruen*. *See Taveras v. New York City, New York*, No. 21-398, 2022 WL 2678719, at *1 (2d Cir. July 12, 2022) (summary order).

*Bruen's* new legal standard became known to the courts nearly six months before the grand jury returned the Superseding Indictment in this case, and approximately eight months before Mr. Oquendo's trial. In these circumstances, it was plain and obvious error for the District Court not to address the presumptive constitutionality of the conduct with which Mr. Oquendo had been charged and to have demanded that the government address the second step of the *Bruen* framework.

In addition, the error affected Mr. Oquendo's substantial rights and the fairness, integrity, or public reputation of judicial proceedings. As this Court has recognized, "[w]here a defendant 'has been convicted of and received a prison sentence for an offense of which there is a substantial possibility he is not guilty, there can be no serious question that allowing

32

such an error to stand would significantly affect the fairness and integrity of judicial proceedings.'" *United States v. Balde*, 943 F.3d 73, 98 (2d Cir. 2019) (quoting *United States v. Garcia*, 587 F.3d 509, 521 (2d Cir. 2009)).

## <u>CONCLUSION</u>

For the foregoing reasons, Mr. Oquendo respectfully requests that this Court remand the case to the District Court with instructions to: (1) as to Count Five, enter a judgment of acquittal; and (2) as to Count Six, vacate the judgment of conviction and dismiss the charge, or, alternatively, conduct further proceedings in which the government must meet its burden of demonstrating that history and tradition support the application of Section 922(g)(1) to Mr. Oquendo's possession of ammunition.

Dated: December 15, 2023

Respectfully submitted,

/s/ Brian E. Spears

BRIAN E. SPEARS
LESLIE A. CAHILL
SPEARS MANNING & MARTINI LLC
*Attorneys for Defendant-Appellant*
2425 Post Road, Suite 203
Southport, Connecticut 06890
(203) 292-9766

## <u>CERTIFICATE OF COMPLIANCE</u>

This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B), the word limit of Local Rule 32.1(a)(4) (A) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f): this document contains 6,288 words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because: this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point font Palatino Linotype.

Dated: New York, New York
        December 15, 2023

# SPECIAL APPENDIX

i

## TABLE OF CONTENTS

**Page**

Judgment Appealed From, dated May 25, 2023 ........ SPA-1

SPA-1

UNITED STATES DISTRICT COURT
District of Connecticut

**JUDGMENT IN A CRIMINAL CASE**

UNITED STATES OF AMERICA

v.

**RAMON OQUENDO**

Case Number: **3:21-CR-00181-JCH(2)**
USM Number: 71252-509

**John Trowbridge Pierpont,
Kenneth L. Gresham**
Assistant United States Attorney

**Peter J. Schaffer**
Defendant's Attorney

The Defendant was found guilty by a jury verdict as to Count 1,2,4,5, and 6 of the Superseding Indictment.

Accordingly, the defendant is adjudicated guilty of the following offense(s):

| Title & Section | Nature of Offense | Offense Concluded | Count |
|---|---|---|---|
| Title 21, United States Code, §841(a)(1) and §841(b)(1)(B)(vi) and 846 | Conspiracy to Distribute and to Possess with Intent to Distribute Fentanyl | 10/26/2021 | 1s |
| Title 21, United States Code, §841(a)(1) and §841(b)(1)(B)(vi) and Title 18 United States Code §2 | Possession With Intent to Distribute and Distribution of Fentanyl | 10/26/2021 | 2s |
| Title 21, United States Code, §841(a)(1) and §841(b)(1)(C) | Possession With Intent to Distribute Controlled Substances | 10/26/2021 | 4s |
| Title 18, United States Code, §924(c)(1)(A)(i) | Possession of a Firearm in Furtherance of a Drug Trafficking Crime | 10/26/2021 | 5s |
| Title 18, United States Code, §922(g)(1) and §924(a)(2) | Unlawful Possession of Ammunition by a Felon | 10/26/2021 | 6s |

SPA-2

Judgment in a Criminal Case                                                      Judgment -- Page 2 of 5

The following sentence is imposed pursuant to the Sentencing Reform Act of 1984.  The sentence imposed is a guideline sentence.

**IMPRISONMENT**
The Defendant is ordered committed to the custody of the Federal Bureau of Prisons for a period of 60 months on count 1s; 60 months on count 2s; 60 months on count 4s; 60 months on count 5s; 36 months on count 6s. Count 1s and Count 5s are to run consecutive, Counts 2s, 4s, and 6s are to run concurrent, for a total term of imprisonment of 120 months. .

**SUPERVISED RELEASE**
Upon release from imprisonment, the Defendant shall be on Supervised Release for a total term of 5 years on Count 1s, 5 years on Count 2s, 3 years on Count 4s, 5 years  on Count 5s, and 3 years on Count 6s, all to be served concurrent, for a total term of supervised release of 5 years.

The Mandatory and Standard Conditions of Supervised Release as attached are imposed. In addition, the following Special Conditions are imposed:

(1)  The defendant shall participate in an educational and/or vocational services program and follow the rules and regulations of that program. Such programs may include, but are not limited to, high school equivalency preparation, job readiness training, and skills development.

(2)  The defendant shall participate in a program recommended by the Probation Office and approved by the court for mental health treatment. The defendant shall follow all rules and regulations of the program. The Probation Office in consultation with the treatment provider shall supervise the defendant's participation in the program. The defendant shall pay all or a portion of the costs associated with treatment based on the defendant's ability to pay as determined by the Probation Office and approved by the court.

(3)  The defendant shall submit his person, residence, office, or vehicle to a search, conducted by a United States Probation Officer, at a reasonable time and in a reasonable manner, based upon reasonable suspicion of contraband or evidence of a violation of a condition of release; failure to submit to a search may be grounds for revocation; the defendant must warn any other residents/occupants that the premises/vehicle may be subject to search pursuant to this condition.

(4)  The defendant shall participate in a program recommended by the Probation Office and approved by the court for outpatient substance abuse treatment and testing. The defendant shall follow all rules and regulations of the programs. The Probation Office shall supervise the defendant's participation in the programs. The defendant shall pay all or a portion of the costs associated with treatment based on the defendant's ability to pay as determined by the Probation Office and approved by the court.

**CRIMINAL MONETARY PENALTIES**
The Defendant must pay the total criminal monetary penalties under the schedule of payments as follows:

| | | |
|---|---|---|
| **Special Assessment:** | $500.00 | to be paid immediately |
| **Fine:** | Waived | N/A |

It is further ordered that the Defendant will notify the United States Attorney for this District within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this Judgment are paid.

SPA-3

Judgment in a Criminal Case                                                        Judgment -- Page 3 of 5

The following counts have been dismissed: Counts 1,2,3, and 4 of the original Indictment, and Count 3 of the Superseding Indictment dismissed on government motions.

**JUDICIAL RECOMMENDATION TO THE BUREAU OF PRISONS**

The Court makes the following recommendations to the Bureau of Prisons: The court strongly recommends the defendant be afforded participation in substance abuse treatment, including the RDAP program, if not available, the NDAP program, and participation in mental health treatment.  The court recommends the defendant be designated to the Danbury facility to maintain family relationships.

Date of Imposition of Sentence:  **May 25, 2023**

/s/Janet C. Hall

_____
Janet C. Hall, United States District Judge

Date: June 9, 2023

SPA-4

Judgment in a Criminal Case                                                                 Judgment -- Page 4 of 5

## CONDITIONS OF SUPERVISION

**In addition to the Standard Conditions listed below, the following indicated (■) Mandatory Conditions are imposed:**

## MANDATORY CONDITIONS

(1) You shall not commit another federal, state or local crime.

(2) You shall not unlawfully possess a controlled substance.

(3) You shall refrain from any unlawful use of a controlled substance.  You must submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.

   ☐ The above drug testing condition is suspended, based on the court's determination that you pose a low risk of future substance abuse. *(check if applicable)*

(4) ☐ You must make restitution in accordance with 18 U.S.C. §§ 3663 and 3663A or any other statute authorizing a sentence of restitution. *(check if applicable)*

(5) ■ You must cooperate in the collection of DNA as directed by the Bureau of Prisons or probation officer. *(check if applicable)*

(6) ☐ You must comply with the requirements of the Sex Offender Registration and Notification Act (42 U.S.C. § 16901, *et seq*.) as directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in which you reside, work, are a student, or were convicted of a qualifying offense. *(check if applicable)*

(7) ☐ You must participate in an approved program for domestic violence. *(check if applicable)*

## STANDARD CONDITIONS

As part of your supervised release, you must comply with the following standard conditions of supervision. These conditions are imposed because they establish the basic expectations for your behavior while on supervision and identify the minimum tools needed by probation officers to keep informed, report to the court about, and bring about improvements in your conduct and condition.

(1)   You must report to the probation office in the federal judicial district where you are authorized to reside within 72 hours of your release from imprisonment, unless the probation officer instructs you to report to a different probation office or within a different time frame.

(2)   After initially reporting to the probation office, you will receive instructions from the court or the probation officer about how and when you must report to the probation officer, and you must report to the probation officer as instructed.

(3)   You must not knowingly leave the federal judicial district where you are authorized to reside without first getting permission from the court or the probation officer.

(4)   You must answer truthfully the questions asked by your probation officer.

(5)   You must live at a place approved by the probation officer. If you plan to change where you live or anything about your living arrangements (such as the people you live with), you must notify the probation officer at least 10 days before the change. If notifying the probation officer in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.

(6)   You must allow the probation officer to visit you at any time at your home or elsewhere, and you must permit the probation officer to take any items prohibited by the conditions of your supervision that he or she observes in plain view.

(7)   You must work full time (at least 30 hours per week) at a lawful type of employment, unless the probation officer excuses you from doing so. If you do not have full-time employment you must try to find full-time employment, unless the probation officer excuses you from doing so.  If you plan to change where you work or anything about your work (such as your position or your job responsibilities), you must notify the probation officer at least 10 days

SPA-5

Judgment in a Criminal Case                                                                                      Judgment -- Page 5 of 5

before the change. If notifying the probation officer at least 10 days in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.

(8)   You must not communicate or interact with someone you know is engaged in criminal activity. If you know someone has been convicted of a felony, you must not knowingly communicate or interact with that person without first getting the permission of the probation officer.

(9)   If you are arrested or questioned by a law enforcement officer, you must notify the probation officer within 72 hours.

(10)  You must not own, possess, or have access to a firearm, ammunition, destructive device, or dangerous weapon (i.e., anything that was designed, or was modified for, the specific purpose of causing bodily injury or death to another person such as nunchakus or tasers).

(11)  You must not act or make any agreement with a law enforcement agency to act as a confidential human source or informant without first getting the permission of the court.

(12)  You must follow the instructions of the probation officer related to the conditions of supervision.

Upon a finding of a violation of supervised release, I understand that the court may (1) revoke supervision <u>and impose a term of imprisonment</u>, (2) extend the term of supervision, and/or (3) modify the conditions of supervision.

These conditions have been read to me. I fully understand the conditions and have been provided a copy of them.

(Signed)  _____                    _____
                   Defendant                                                                      Date

              _____                    _____
              U.S. Probation Officer/Designated Witness                            Date

**CERTIFIED AS A TRUE COPY ON THIS DATE:**  _____

By: _____

        Deputy Clerk

**RETURN**

I have executed this judgment as follows:

Defendant delivered on _____ to _____ a _____, with a certified copy of this judgment.

                                                                    _____
                                                                    Lawrence Bobnick
                                                                    Acting United States Marshal

                                               By   _____
                                                                    Deputy Marshal